The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on October 30, 2017, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: October 30, 2017**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-16274 |
| | ) | |
| TAMMY A. JOHNSON, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |
| | ) | |

ORDER

On November 3, 2015, the *pro se* debtor filed the above-captioned voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On June 21, 2016, the Court issued an order confirming the debtor's Chapter 13 plan (Docket No. 54). The confirmation order states in part:

> The Debtor shall pay over to the Trustee each year during the pendency of the case any and all federal income tax refunds, unless the Court orders otherwise. The Debtor may retain from any federal income tax refund either $1,000.00 from a single tax return ($2,000.00 from a joint tax return) or the sum of any earned income tax credit and child tax credits, whichever is greater. This paragraph shall not apply if the Debtor is paying unsecured creditors in full, or if the Debtor has averaged the anticipated tax refund on Schedule I.

On July 27, 2017, the *pro se* debtor filed a modified plan (Docket No. 61), which the Court construed as a motion to modify the confirmed plan. Apparently, the three modifications were (1) the debtor would keep all of her 2016 tax refund; (2) the debtor would not pay through the plan the estimated $5,000 in delinquent property taxes owed to the Cuyahoga County Fiscal Office; and (3) the debtor would increase the amount she paid to unsecured creditors from $11,838.59 to $14,000.

The Court heard argument on September 14, 2017, and provided for supplemental briefing.

Under 11 U.S.C. § 1329(a), the debtor can seek a modification, which becomes the plan unless the Court disapproves the modification. Courts are divided over whether the proponent of a modified plan must demonstrate a change in circumstances to justify modification after confirmation. The U.S. Courts of Appeals for the Fourth and Ninth Circuits have imposed a changed-circumstances requirement, while the Seventh and First Circuits have refused any such precondition. *Compare Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 241-43 (4th Cir. 1989) (requiring an "unanticipated, substantial changes in the debtor's financial condition"); and *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994) (requiring a "substantial change in the debtor's ability to pay since

2

the confirmation hearing and that the prospect of the change had not already been taken into account at the time of confirmation"); *with In re Witkowski*, 16 F.3d 739, 743 (7th Cir. 1994) (requiring "no threshold change in circumstances standard"); and *Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000) (rejecting the "substantial and unanticipated test" but requiring a "legitimate reason" for modification). The Sixth Circuit has yet to address this question in a published opinion.

The Sixth Circuit Bankruptcy Appellate Panel held that although there is no changed circumstances precondition to modification, "§ 1327 precludes modification of a confirmed plan under § 1329 to address issues that were or could have been decided at the time the plan was originally confirmed. . . . The practical impact of this conclusion is that modification under § 1329(a) will be limited to matters that arise post-confirmation." *Storey v. Pees* (*In re Storey*), 392 B.R. 266 (B.A.P. 6th Cir. 2008) *citing In re Welch*, No. 97-5080, 1998 WL 773999, *2 (6th Cir. Oct. 11, 1998) ("Section 1329(a) has been consistently interpreted as barring the relitigation of any issue which was decided or which could have been decided at confirmation.").

Bankruptcy courts faced with debtors' modifications to keep portions of tax refunds promised to unsecured creditors have considered a variety of factors. A

3

bankruptcy court in the Eastern District of Wisconsin held that a debtor could modify her Chapter 13 plan to keep half of her tax refund that had been promised to unsecured creditors in the original plan. *In re McPike*, No. 05-30518, 2007 WL 2317420 (Bankr. E.D. Wis. Aug. 8, 2007). The court approved the debtor's modification because the modification dealt with "prospective tax refunds and [was] proposed in good faith promptly after the debtor's unemployment caused a reduction in income." *In re McPike*, No. 05-30518, 2007 WL 2317420, *1.

Other courts look to additional factors when deciding whether to allow a debtor to modify the Chapter 13 plan to retain a tax refund to cover expenses. "These factors include (1) whether the expenses are necessary and the amounts reasonable; (2) whether the expenses fall within the expense categories in Schedule J; (3) whether the particular expense was foreseeable within the category; and (4) whether there is sufficient money within the category to pay the expense." *In re Lynch*, 415 B.R. 712, 713 (Bankr. N.D. Iowa 2009) (debtors can retain part of postconfirmation tax refund to repair vehicle but not additional refund for purpose of paying prepetition student debt) *quoting In re Kruse,* 406 B.R. 833 (Bankr. N.D. Iowa 2009). Courts may also consider

> The amount of the debtor's tax refund, the amount of the refund in comparison to the total tax due, the debtor's yearly income and expenses, the debtor's overall budget, the number and nature of the debtor's dependents, the amount being paid into the debtor's plan, the

4

> dividend being paid to unsecured creditors, and the length of the debtor's plan.

*In re Lynch*, 415 B.R. at 713-14 (quoting *In re Michaud,* 399 B.R. 365, 372 (Bankr. D.N.H. 2008)).

The information provided by the debtor thus far does not appear to establish cause for the modification post-confirmation. For example:

(1) The debtor received her refund in March 2017 but did not seek modification until July 27, 2017. The debtor provided no explanation for her failure to seek permission to keep more of her tax refund before receiving and then spending her tax refund.

(2) It appears that most of the expenses were for repairs or maintenance that the debtor was aware of prior to confirmation, and that the only change is that the debtor now has a potential source of additional income to pay for those expenses.

(3) The modified plan also proposes to drop the claim for the estimated $5,000 in delinquent property taxes owed to the Cuyahoga County Fiscal Office. If so, it would appear appropriate to modify the plan to increase unsecured payments by a like amount.

Due to insufficient information, the Court will give the debtor time to make a proffer addressing the following:

(1) An itemized list of exactly what the tax refund money was spent on with documentation of those expenses;

(2) Documentation of any unanticipated expenses after confirmation that were not included in Schedule J;

(3) An explanation as to why the debtor waited until July and after the refund was already spent to seek permission from the Court for a modification;

(4) An explanation as to how the estimated $5,000 secured debt for prepetition property taxes was satisfied outside of any plan payments; and

(5) An explanation as to why the $5,000 for prepetition property taxes should not be made available for unsecured creditors, therefore raising the payment in paragraph 7 of the confirmed plan from $11,838.59 to $16,839.59.

The Court will give the debtor until **November 21, 2017,** to submit the proffer. The trustee will have until **December 5, 2017,** to respond. Then the Court will either set the matter for an evidentiary hearing or take the matter under advisement.

If the Court denies the current motion to modify the plan, the debtor may still seek to modify the refund arrangement going forward, modify her monthly payments to the trustee, or modify the percentage paid to unsecured creditors to address issues other than those that could have been addressed at the time her plan was confirmed on June 21, 2016.

IT IS SO ORDERED.